For Publication

### DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | |
|---|---|
| **WALTER GARDINER, Individually and as** ) <br> **Member of HEALTHQUEST, LLC, d/b/a** ) <br> **VIRGIN ISLANDS KIDNEY CENTER and** ) <br> **the CARIBBEAN KIDNEY CENTER,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **v.** ) <br> ) <br> ) <br> **ST. CROIX DISTRICT GOVERNING** ) <br> **BOARD OF DIRECTORS, Individually and** ) <br> **Collectively in their official capacity,** ) <br> **GOVERNOR JUAN F. LUIS HOSPITAL** ) <br> **AND MEDICAL CENTER, A CORPORATION** ) <br> **OF THE VIRGIN ISLANDS, JEFF NELSON,** ) <br> **CEO, CFO, COO, and DR. COLERIDGE T.** ) <br> **FRANKLIN, JR. and JOHN DOES 1-10,** ) <br> ) <br> **Defendants.** ) <br> _____) | **Civil Action No. 2012-027** |

**Attorneys:**
**Scot F. McChain, Esq.,**
**Yohana Manning, Esq.,**
St. Croix, U.S.V.I.
　　　*For the Plaintiffs*

**Warren B. Cole, Esq.,**
St. Croix, U.S.V.I.
　　　*For the Defendants*

### <u>MEMORANDUM OPINION</u>

**Lewis, District Judge**

　　　This matter comes before the Court on Plaintiffs' Emergency Motion to Remand to State Court, (Dkt. No. 2), filed on March 18, 2012. A hearing was held on March 22, 2012. For the reasons that follow, the Court will grant Plaintiffs' Motion and remand this matter to the Superior Court of the Virgin Islands.

## I.   BACKGROUND AND PROCEDURAL HISTORY

This case originated in the Superior Court of the Virgin Islands on March 9, 2012, when Plaintiffs filed a Complaint alleging seven causes of action arising from the February 29, 2012, termination of Plaintiff Dr. Gardiner's hospital privileges at Juan F. Luis Hospital ("Hospital"). Plaintiffs' Emergency Motion for Remand was precipitated by Defendants' Notice of Removal, (Dkt. No. 1), which was filed on March 15, 2012, and through which this case came before the District Court.

Plaintiffs' seven-count Complaint asserts the following causes of action: 1) Wrongful Termination of Hospital Staff Privileges; 2) Violation of the Virgin Islands Antitrust Statute, Title 11 V.I.C. 1501, et seq.; 3) Tortious Interference with Prospective Economic Advantage; 4) Breach of the Implied Covenant of Good Faith and Fair Dealing; 5) Defamation; 6) Unfair Competition; and 7) Criminally Influenced & Corrupt Practices Act. The gravamen of the Complaint is that Defendants terminated the hospital privileges of Dr. Gardiner—a kidney disease specialist and medical director of the Caribbean Kidney Center—as part of a conspiracy to monopolize the provision of dialysis services in the Virgin Islands. Plaintiffs allege that the incident for which Dr. Gardiner's privileges were terminated was merely a pretext to eliminate the competition posed by Dr. Gardiner because, without hospital privileges, he will not be able to provide full dialysis treatment to his patients. Compl. at ¶¶ 2-3.

Together with the Complaint, Plaintiffs also filed a Motion for Temporary Restraining Order and Preliminary Injunction in the Superior Court on March 9, 2012. (Dkt. No. 1-2). On March 12, 2012, the Superior Court issued a Temporary Restraining Order, requiring the reinstatement of Dr. Gardiner's hospital privileges and enjoining Defendants from terminating or

otherwise impairing such privileges. (Dkt. No. 1-3).[1] During the pendency of the Temporary Restraining Order, Defendants filed their Notice of Removal in this Court on March 15, 2012, (Dkt. No. 1), which was followed by the filing of Plaintiffs' Emergency Motion for Remand on March 18, 2012, (Dkt. No. 2).[2] On March 19, 2012, the Court ordered Defendants to file a response to Plaintiffs' Motion to Remand, (Dkt. No. 5), and, on March 21, 2012, Defendants filed their Opposition to Plaintiffs' Remand Motion, (Dkt. No. 8). Oral arguments were presented to the Court on March 22, 2012. The following day, the Court ordered the parties to submit memoranda on another aspect of the jurisdictional issue, (Dkt. No. 12), and the parties submitted their additional memoranda to the Court on March 26, 2012, (Dkt. Nos. 15-16).

As the basis for removal under 28 U.S.C. § 1441(c),[3] Defendants assert that three of the seven claims in Plaintiffs' Complaint are "founded on a claim or right arising under the

---

[1] The Temporary Restraining Order, which was entered *ex parte*, was based on the Superior Court's finding that "Plaintiffs will suffer immediate and irreparable injury, loss, and damages." (Dkt. No. 1-3).

[2] On March 19, 2012, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction in this Court. (Dkt. No. 3). On the same day, Defendants filed an Interim Opposition to Plaintiffs' Emergency Motion for Preliminary Injunction, (Dkt. No. 4), and, on March 21, 2012, Defendants filed an Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, (Dkt. No. 9). On March 23, 2012, Plaintiffs filed an Emergency Motion for Extension of Temporary Restraining Order, (Dkt. No. 13), and the following day, Defendants filed their Opposition, (Dkt. No. 14). On March 26, 2012, Plaintiffs filed a Motion for Expedited Discovery to develop their factual record in preparation for a hearing on the requested Preliminary Injunction. (Dkt. No. 17). The same day, the Court issued an Order, deferring ruling on the Emergency Motion for Extension of Temporary Restraining Order, the Motion for Temporary Restraining Order and Preliminary Injunction, and the Motion for Expedited Discovery pending resolution of the subject-matter jurisdiction issue raised by Defendants' Notice of Removal and Plaintiffs' Motion for Remand. (Dkt. No. 18).

[3] Defendants actually cited to 28 U.S.C. § 1441(b). However, because 28 U.S.C. § 1441(b) governs removal based on diversity of citizenship, Defendants must have intended to refer to 28 U.S.C. § 1441(c), which provides original jurisdiction for "a claim arising under the

Constitution, treaties or laws of the United States." Defs.' Not. of Removal at 2.[4] First, Defendants argue that Count I, entitled "Wrongful Termination of Hospital Privileges," is "based on federal law," because Plaintiffs allege that "Dr. Gardiner was entitled to the constitutional safeguards of the due process clause of the fourteenth amendment prior to the termination of his hospital privileges." *Id.* at 3 (quoting Compl. at ¶ 98). Second, Defendants assert that because Plaintiffs allege violations of federal law in Count VII (Criminally Influenced and Corrupt Practices Act)—namely, 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud)—and also claim that Defendants engaged in activities affecting foreign and interstate commerce, these alleged federal violations form a "predicate part" of Plaintiffs' state-law claim. Defs.' Not. of Removal at 3. Accordingly, Defendants argue that Plaintiffs have "stated a claim that arises under the laws of the United States." *Id.* at 4.

Third, in Defendants' Supplemental Brief, they claim that Count IV, entitled Breach of the Implied Covenant of Good Faith and Fair Dealing does not properly allege a due process violation under the hospital bylaws because it fails to cite to an express provision of the bylaws. Defendants argue that the claim must therefore arise under the Fourteenth Amendment of the United States Constitution. (Dkt. No. 16).[5]

---

Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title) . . ." 28 U.S.C. § 1441(c) (2011).

[4] In their Notice of Removal, Defendants asserted an additional basis for removal, arguing that in Count II, entitled Violation of the Virgin Islands Antitrust Statute, "the conduct alleged also falls within the ambit of the Sherman Act, codified at 15 U.S.C. §§ 1-7," and the antitrust claim requires interpretation of that federal law. Defs.' Not. of Removal at 4. However, at the March 22, 2012, hearing, Defendants withdrew this argument.

[5] This argument was made by Defendants in their Supplemental Brief. (Dkt. No. 16). Because this argument was not previously raised in the filings or during oral argument, Plaintiffs did not have an opportunity to respond.

In their Emergency Motion for Remand, Plaintiffs argue that Defendants' Notice of Removal is "based on unsound law" because Counts I and VII are "simply local issues that reference federal law as guideposts . . . ." Pls.' Mot. for Remand at 3. Specifically, Plaintiffs claim that Count I does not give rise to federal jurisdiction because Dr. Gardiner's constitutional rights are granted and governed by the Revised Organic Act of 1954 rather than the United States Constitution. *Id.* at 4. Plaintiffs additionally argue that the allegations of wire and mail fraud in Count VII "are merely two predicate acts alleged," and that "the federal issue is not significantly weighty to confer federal question jurisdiction." *Id.* at 5.

## II.   DISCUSSION

### A.  Applicable Legal Principles

Removal of cases from state to federal court is governed by 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Here, Defendants allege that removal was proper pursuant to § 1441(c), which provides for original jurisdiction over "a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title)." § 1441(c).[6] Accordingly, the Court must decide whether Counts I, IV, and VII of the Complaint "arise under the Constitution, laws, or treaties of the United States." *Id.*

---

[6] Because the "arising under" language found in § 1441 is nearly identical to the "arising under" language contained in § 1331, the scope of removal based on "arising under" jurisdiction under § 1441 is considered to be identical to that under § 1331. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 391-92 (1987).

As a preliminary matter, the Court emphasizes that the party seeking removal—here, Defendants—bears the burden of establishing federal jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Samuel-Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 397 (3d Cir. 2004) ("The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."). Further, removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch and Signal Div.,* 809 F.2d 1006, 1010 (3d Cir. 1987); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986) (because removal jurisdiction raises substantial federalism concerns, it is to be strictly construed: "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system."); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *KIA Motors*, 357 F.3d at 396 ("28 U.S.C. § 1441 is to be strictly construed against removal.").

In considering removal jurisdiction under § 1441(c), and when evaluating original "arising under" jurisdiction under § 1331, federal courts apply the rule of the "well-pleaded complaint," under which "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc.*, 482 U.S. at 391-92. When reviewing the Complaint and deciding whether the exercise of "arising under" jurisdiction is appropriate, the Court must first decide whether state or federal law creates the cause of action in question. The vast majority of cases brought under § 1331 "are those in which federal law creates the cause of action." *Merrell Dow*, 478 U.S. at 809. In those cases, federal courts unquestionably have federal subject-matter jurisdiction. *Id*.

However, "a case may [also] arise under federal law 'where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow*, 478 U.S.

at 808 (quoting *Franchise Tax Board of State of Cal. v. Constr. Laborers*, 463 U.S. 1, 9 (1983)). This is so as long as "the plaintiff's right to relief necessarily depends on a substantial question of federal law." *Franchise Tax Board*, 463 U.S. at 28. In describing this basis for "arising under" federal jurisdiction, the Supreme Court in *Grable & Sons Metal Products v. Darue Eng'g*, 545 U.S. 308 (2005), explained that federal courts may exercise jurisdiction over state-law claims with an embedded issue of federal law only when the state-law claim contains a federal issue that is "disputed" and "substantial," and when the exercise of federal jurisdiction is "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313-14. Accordingly, the "appropriateness of a federal forum to hear an embedded issue could be evaluated only after considering the 'welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judiciary.'" *Id.* at 314 (quoting *Franchise Tax Board*, 463 U.S. at 8).  In *Grable*, the Supreme Court made clear that "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Grable*, 545 U.S. at 314. In sum, in stressing the "slim category" of cases where federal jurisdiction is properly exercised over a federal-law issue embedded within a state-law claim, the Supreme Court made clear that "it takes more than a federal element 'to open the 'arising under' door.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

Thus, although federal and some state-law claims fall under the rubric of § 1331 federal-question jurisdiction, the Court's jurisdictional analysis will differ if the claim is determined to be a direct federal claim or a state-law claim with an embedded federal-law issue. *Cf. Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 277 & n.3 (3d Cir. 2007) ("Federal question jurisdiction exists

7

when the plaintiff's well-pleaded complaint establishes that federal law creates the cause of action . . . . This so-called 'creation test' is 'the most familiar definition of statutory 'arising under' limitation." (citations and quotations omitted)); *Grable*, 545 U.S. at 312, 314 (the second and "less frequently encountered" category includes embedded federal-law questions—suits involving a state-law cause of action which "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.").

Almost two decades prior to the *Grable* decision, the Supreme Court addressed yet another circumstance in which the "arising under" federal-question jurisdiction was argued to arise. In that context, the Supreme Court expressly rejected the exercise of federal jurisdiction over a state-law cause of action supported by independent state and federal-law theories. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988). In *Christianson*, the Supreme Court was faced with deciding whether a cause of action was one "arising under any Act of Congress relating to patents" for purposes of federal jurisdiction pursuant to 28 U.S.C. § 1338(a). As relevant here, the Court explained that resolution of the § 1338(a) "arising under" inquiry was governed by the same principles as the § 1331 "arising under" test. Because the patent-law issue was only essential to one of several, independent theories under each claim, the Supreme Court held that "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Id.* at 810. Accordingly, when a complaint provides "'reasons completely unrelated to the provisions and purposes' of federal . . . law, why petitioners 'may or may not be entitled to the relief [they] see[k]' . . . the claim does not 'arise under' . . . federal law." *Id.* at 812 (quoting *Franchise Tax Board*, 463 U.S. at 26.)

In sum, in deciding whether there is a federal question under § 1331, the Court's analysis is directed by up to two considerations. First, the Court must determine whether the cause of action is a federal or state-law claim. If the Court concludes that it is a federal-law cause of action, the Court will properly exercise "arising under" jurisdiction over the claim. If the Court determines that it is a state-law cause of action, the Court will address the second inquiry— whether the federal-law issue is an embedded element of the state-law claim as explained in *Grable* or if, as described in *Christianson*, the federal-law issue is an alternative theory supporting the state-law cause of action in addition to an independent state-law theory. The Court will then perform the analysis as required by the governing inquiry.

With these principles in mind, the Court addresses Counts I, VII and IV of Plaintiffs' Complaint.

### B.  Count I: Wrongful Termination of Hospital Staff Privileges

Count I of Plaintiffs' Complaint is denominated "Wrongful Termination of Hospital Staff Privileges," and provides in pertinent part:

COUNT 1
(Wrongful Termination of Hospital Staff Privileges)
. . .

98. Dr. Gardiner was entitled to the constitutional safeguards of the due process clause of the fourteenth amendment prior to the termination of his hospital privileges.

99. Prior to termination of his medical staff privileges, Dr. Gardiner was entitled to a fair procedure that afforded him an opportunity to learn of the allegations against him and an adequate opportunity to answer.

100. By refusing to give Dr. Gardiner a fair hearing the Defendants instead employed a lightning fast ambush designed to keep him unaware of their intended actions.

101. To support Defendants' unlawful actions, Defendants chose to rely solely on uncorroborated, double and triple hearsay statements; refused to allow or permit

9

Dr. Gardiner to challenge the evidence and/or put forward his own witnesses; and thus the Defendants and the Hospital in particular wrongfully terminated Dr. Gardiner's hospital privileges.

102. Moreover, by terminating Dr. Gardiner's hospital privileges to gain an unfair competitive advantage regarding his dialysis patients, the Hospital further breached the implied covenant of good faith and fair dealing.

Compl. at ¶¶ 98-102. During oral argument, Defendants claimed that Count I is uniquely federal and accordingly falls under the first category of § 1331 claims—a pure federal-law claim over which the *Grable* analysis does not apply.[7] Consistent with the governing legal principles, the Court will first address the question whether Count I is a federal or state-law cause of action.

Plaintiff styled Count I as "Wrongful Termination," which does not suggest a uniquely federal cause of action in view of an obvious state-law connection. *See Hodge v. Daily News Publ'g Co.*, 2009 WL 8391641, *3 (V.I. Sup. Ct. 2009) (explaining the elements of a wrongful discharge action); Virgin Islands Wrongful Discharge Act. 24 V.I.C. § 76 (1996). As to the allegations within the Count, paragraphs 98 through 101 describe the allegedly deficient pre-termination process afforded to Dr. Gardiner by Defendants, with paragraph 98 referring to "the constitutional safeguards of the due process clause of the fourteenth amendment." Compl. at ¶ 98. Paragraph 102 goes on to provide that "the Hospital *further* breached the implied covenant of good faith and fair dealing." *Id.* at ¶ 102. (emphasis added). Although initially asserting during

---

[7] In arguing that Count I is a pure federal-law claim, Defendants rely on *Vallade v. Parilla*, in which the District Court of the Virgin Islands found that an alleged violation of the Fourth Amendment "constitutes an independent cause of action . . . for which plaintiff may seek redress in federal court." 799 F.Supp. 561, 566 (D.V.I. 1992). Defendants introduced *Vallade* during oral argument, and provided minimal oral and no written argumentation on its applicability to this matter. Although *Vallade* enunciates the unremarkable principle that a litigant stating an independent cause of action under the United States Constitution is entitled to seek redress in a federal court, it is otherwise unclear how a case in which a *pro se* plaintiff was allowed to amend his complaint to properly assert a Fourth Amendment claim answers the context-specific question here.

oral argument that due process is the only grounds upon which Plaintiffs claim that the termination of Dr. Gardiner's hospital privileges is wrongful, Defendants' counsel later conceded that the alleged constitutional violation is not the sole basis for Plaintiffs' alleged wrongful termination as pleaded in Count I.[8]

During oral argument, Plaintiffs expressly disclaimed that the essence of Count I is grounded in the Constitution, but instead described Count I as a wrongful discharge claim under Virgin Islands law.[9] Plaintiffs explained that the wrongful discharge was a result of both the denial of due process and the breach of the implied covenant of good faith and fair dealing.[10]

---

[8] Here and elsewhere during the hearing, counsel for Defendants pressed the argument that a particular state-law claim alleged in the Complaint did not, in their view, state a viable cause of action. However, in the current context, the Court is not considering or deciding whether a claim would succeed. Except in extreme cases not demonstrated here, the Court's jurisdictional analysis is based on the allegations as pleaded in the Complaint. *See, e.g.*, *Metro. Life Ins.*, 501 F.2d at 276 ("For jurisdictional purposes, the issue is not whether [the plaintiff] will ultimately be successful in sustaining its cause of action . . . ."); *Bell v. Hood*, 327 U.S. 678, 681-82 (1946) ("Jurisdiction, therefore, is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.").

[9] In their Motion for Remand, Plaintiffs argue that Dr. Gardiner's "due process rights are not specifically granted by the United States Constitution, but by the Revised Organic Act of 1954, which is the constitution of the Virgin Islands." Pls.' Mot. for Remand at 4 (citations omitted). Plaintiffs further argue that the Revised Organic Act is a local statute and accordingly, this Court does not have jurisdiction over the Revised Organic Act itself or issues over the rights that flow from that statute. *Id.* at 4-5. The Court rejects this argument.

First, the Revised Organic Act is a federal statute over which the Court may exercise subject-matter jurisdiction. *See, e.g. Thorstenn v. Barnard*, 883 F.2d 217, 218 (3d Cir. 1989) ("Since plaintiffs asserted a violation of a federal statute, viz., the Organic Act, the claims if brought . . . would have been cognizable under 28 U.S.C. § 1331. Subject matter jurisdiction in the district court for the Virgin Islands, therefore, existed pursuant to Section 22 of the Revised Organic Act of 1954 . . . ."). Second, the due process clause of the Fourteenth Amendment of the United States Constitution applies to citizens of the Virgin Islands. In relevant part, the Revised Organic Act provides: "The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands . . . the second sentence of section 1 of the fourteenth amendment." 48 U.S.C.A. § 1561 (1984). This sentence within the Fourteenth Amendment states:

In deciding whether Count I is a federal or state-law cause of action, the Court considers that "the question depends upon the plaintiff's declaration . . . . [a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 259 (1916) (finding that "a suit for damages to business caused by a threat to sue under the patent law is not itself a suit under the patent law."). Count I is not purely a state-law claim because its pleading includes an alleged violation of federal constitutional law. Rather, it is a claim to seek redress under a state-law cause of action—Wrongful Termination—based on alleged "violations of the fourteenth amendment of the constitution" and also based on the alleged "breach[] [of] the implied covenant of good faith and fair dealing." Accordingly, the Court concludes that Count I is a state-law cause of action which includes a federal-law issue.

Second, the Court must decide whether the federal-law issue is an embedded element in the state-law claim, as explained in *Grable*, or whether, as described in *Christianson*, there are alternative state and federal-law theories that independently support the state-law claim. While Grable contemplates "that a federal court ought to be able to hear claims recognized under state law that nonetheless *turn* on substantial questions of federal law," *Grable*, 545 U.S. at 312 (emphasis added), *Christianson* instructs that federal jurisdiction should not be exercised over a state-law claim when the Complaint provides independent state and federal-law theories: "If 'on

---

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV § 1.

[10] In response to Defendants' argument that Plaintiffs cannot invoke a breach of good faith and fair dealing without citing to a contract, Plaintiffs claimed during oral argument that a review of the entire Complaint reveals that there is an agreement between Dr. Gardiner and the Hospital and an implied covenant of good faith and fair dealing that accompanies that agreement.

the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of the [federal law] why the [plaintiff] may or may not be entitled to the relief it seeks,' then the claim does not 'arise under' those [federal] laws." *Christianson*, 486 U.S. at 810. Here, because the Complaint provides a state-law basis for the alleged wrongful discharge—breach of the implied covenant of good faith and fair dealing—*and* offers an entirely separate federal-law basis for the wrongful discharge—violation of "the constitutional safeguards of the due process clause of the fourteenth amendment"—the federal-law issue is not "a necessary element of one of the well-pleaded claims." *Merrell Dow*, 478 U.S. at 813. Therefore, Count I falls into the category of claims governed by *Christianson*.

In *Christianson*, the Supreme Court made clear that "[t]he well-pleaded complaint rule. . . focuses on claims, not theories and just because an element that is essential to a particular theory might be governed by federal . . . law does not mean that the entire [state-law] claim 'arises under' . . . [federal] law." *Christianson*, 486 U.S. at 811. Accordingly, "a claim supported by alternative theories in the complaint may not form the basis for [arising under] jurisdiction unless [federal law] is essential to each of those theories." *Id.* at 810.

In Count I, the allegation of a constitutional violation and the allegation of a breach of good faith and fair dealing are independent theories. "One of the key characteristics of a mere 'theory,' as opposed to a distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) (citing *Christianson*, 486 U.S. at 810-13). Here, Plaintiffs may prevail on the wrongful termination claim under the state-law theory "for reasons completely unrelated to the provisions and purposes" of the alleged constitutional violation. *Christianson*, 486 U.S. at 810. Under Virgin Islands law:

13

> [T]o state a claim for breach of the implied duties of good faith and fair dealing, a party must allege: (1) that a contract existed between the parties, and (2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties.

*LPP Mortg. v. Prosper*, 2008 WL 5272723, *2 (D.V.I. 2008) (citing Restatement (Second) of Contracts § 205; *Boehm v. Chase Manhattan Bank*, 2002 WL 31986128, *4-5 (D.V.I. 2002)).[11] Because Count I advances alternative theories under state and federal law, the exercise of federal subject-matter jurisdiction over Count I would contravene the Supreme Court's instructions in *Christianson*. *See, e.g., Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 153 (4th Cir. 1994) ("Accordingly, *Christianson* teaches us that, if a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist.").

Several courts of appeal have applied *Christianson* to a claim of wrongful termination that is supported by both state and federal-law theories and concluded that the exercise of federal jurisdiction was improper. *See Long v. Bando Mfg. of America*, 201 F.3d 754, 760 (6th Cir. 2000) (holding that a wrongful discharge claim based on alleged due process violations of the United States and Kentucky Constitutions, as well as alleged violations of public policy put forth in four federal criminal statutes, did not give rise to federal jurisdiction because, under *Christianson*, the complaint put forth "alternate bases in state and federal law . . . in contravention of which [the Plaintiff] was discharged."); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d

---

[11]  In their Brief in Further Support of Remand, Plaintiffs argue that the breach of implied covenant of good faith and fair dealing alleged in Count I of the Complaint actually encompasses three local-law theories that may be proven entirely on local-law grounds: breach of the implied covenant of good faith and fair dealing with respect to the employment agreement; breach of the implied covenant of good faith and fair dealing with respect to the medical staff privileges; and constructive discharge in violation of the Virgin Islands Wrongful Discharge Act.

811, 817 (4th Cir. 2004) (finding no federal jurisdiction over a wrongful termination claim based on alleged violations of the First Amendment of the United States Constitution and the laws of South Carolina because under *Christianson*, "if the plaintiff can support his claim with even one theory that does not call for an interpretation of federal law, his claim does not 'arise under' federal law for purposes of § 1331."); *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 347 (9th Cir. 1995) (finding that the exercise of federal jurisdiction over a wrongful termination action was improper when the action "is supported by three alternative theories . . . . [and] [o]nly one theory, that which invokes Title VII to establish the public policy, clearly rests on a federal theory."); *Wily v. Coastal Corp.*, 855 F.2d 1160, 1170 (5th Cir. 1988) (concluding that, under *Christianson*, there is no federal jurisdiction over a wrongful discharge action brought by a plaintiff who alleged he was fired for insisting that his employer comply with various state and federal regulations because the case was "supported by alternative theories, first that his discharge was wrongful because it was on account of his attempt to cause employer compliance with or refusal to violate federal law, and second that it was wrongful because it was on account of his attempt to cause his employer compliance with or refusal to violate state law.").

Because Count I provides independent federal and state-law theories for the Wrongful Termination of Hospital Privileges—"violations of the fourteenth amendment of the constitution" and a "breach[] [of] the implied covenant of good faith and fair dealing"—the Court concludes that under *Christianson,* federal jurisdiction is not properly exercised over Count I.

15

### C. Count VII:  Virgin Islands Criminally Influenced and Corrupt Practices Act, 14 V.I.C. §§ 601 et seq.

In their Notice of Removal, Defendants argue that under Count VII, the Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO"), Plaintiffs allege violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud) as a predicate part of their claim. Defs.' Not. of Removal at 3. During oral argument, Defendants correctly categorized Count VII as a state-law claim with an embedded federal question and acknowledged that the *Grable* test governs the propriety of the Court's subject-matter jurisdiction over Count VII.

In support of their argument for federal jurisdiction, Defendants rely on *Seawright v. Greenberg*, where the Third Circuit held that a district court had § 1331 subject-matter jurisdiction over state-law claims involving alleged violations of the Federal Rules of Civil Procedure, 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). 223 F. App'x 145 (3d Cir. 2007).[12] Defendants argue that, in this case, alleged violations of mail and wire fraud should similarly give rise to federal subject-matter jurisdiction. Defs.' Not. of Removal at 3-4.

Plaintiffs argue, on the other hand, that the allegations of federal mail and wire fraud are "merely two predicate acts alleged . . . and proof of the wire and mail fraud allegations involve no question of federal statutory interpretation, [therefore] the federal issue is not significantly weighty to confer federal question jurisdiction." Pls.' Mot. for Remand at 5. During oral argument and in their Motion for Remand, Plaintiffs further argued that district courts in other jurisdictions have found that predicate federal felonies underlying state-law Racketeer Influenced and Corrupt Organizations ("RICO") claims do not create "arising under" federal jurisdiction.

---

[12] During oral argument, Defendants acknowledged that *Seawright* is non-precedential and does not contain an analysis of the governing *Grable* test.

*See, e.g., Graham Commercial Realty, Inc. v. Shamsi*, 75 F. Supp.2d 1371 (N.D. Ga. 1998); *Horowitz v. Marlton Oncology, P.C.*, 116 F. Supp.2d 551, 556 (D.N.J. 1999).

The Court agrees with Plaintiffs, finding that here, the reference to two federal statutes in a state-law cause of action fails to fall within the "special and small category" of § 1331 jurisdiction based on federal issues embedded in state-law claims. *Empire Healthchoice*, 547 U.S. at 701.[13] Although "there is no 'single, precise definition' of when a case falls within the original 'federal question' jurisdiction of federal courts," *Landsman v. Funk, P.C.,* 640 F.3d 72, 81 (3d. Cir. 2011), the federal law cited within Count VII of Plaintiffs' Complaint fails to satisfy *Grable's* governing considerations.[14]

First, a review of the Complaint reveals that the interpretation of the federal mail and wire fraud statutes is not in dispute, only whether Defendants acted in violation of those statutes. *Kalick*, 372 F. App'x at 320 ("[I]t does not appear from [Plaintiff's] complaint that the interpretation of the federal regulation is in dispute, only whether [Defendant] abided by the regulations."). Thus, the federal issues presented are not disputed because an interpretation of the meaning of the federal statutes is not required. *See, e.g., Fairfax Fin. Holdings Ltd., v. S.A.C. Capital Mgmt.*, 2007 WL 1456204, *4 (D.N.J. 2007) (finding that federal predicate offenses in a state-law RICO claim are not "disputed" under *Grable*, and accordingly do not give rise to

---

[13] Count VII also alleges that Defendants engaged in "activities that affect interstate and foreign commerce." Compl. at ¶ 140. Although Defendants refer to this allegation in their Notice of Removal, (Defs.' Not. of Removal at 3), neither party presented argument on this point. This reference does not alter the Court's conclusion.

[14] The Court recognizes that in *Seawright*, the Third Circuit found that federal jurisdiction was appropriate over claims regarding 18 U.S.C. § 1341, 18 U.S.C. § 1343, and the Federal Rules of Civil Procedure. Here, however, because the Court is tasked with applying the *Grable* test, the Court is guided instead by the Third Circuit cases that have addressed *Grable*. *See Landsman v. Funk, PC,* 640 F.3d 72; *Kalick v. Northwest Airlines*, 372 F. App'x 317, 320 (3d Cir. 2010).

federal subject-matter jurisdiction when the federal offenses "relate to issues governed by state law or they raise questions of fact," instead of requiring interpretation of a federal legal issue); *Cf. Grable*, 545 U.S. at 315 (finding the federal statute's meaning was actually disputed).

*Grable* presented a case with undisputed facts where only the interpretation of a federal tax statute was at issue, rendering the case dependent on the interpretation of that federal law. *Id.* Here, there is nothing before the Court that suggests the case will turn on an interpretation of the federal mail and wire fraud statutes.[15] Absent any indication that Count VII requires resolution of a disputed issue of federal law, *Grable* does not support the Court's exercise of "arising under" jurisdiction. *See Sullivan v. Novartis Pharm. Corp.*, 602 F. Supp.2d 527, 535 (D.N.J. 2009) ("In the absence of any current indication that this case will require the resolution of disputed federal issues of general application, *Grable* counsels against the exercise of jurisdiction.").

Second, use of the federal mail and wire fraud statutes as predicate offenses does not present a substantial federal-law issue. An issue is "substantial" if it "indicate[s] a serious federal interest in claiming the advantages thought to be inherent in a federal forum[.]" *Grable*, 545 U.S. at 313. The federal interest in the state-law claim "must be substantial enough to justify turning a state-law claim 'into a discrete and costly 'federal case.'" *Stephens v. Gentiello*, 2012 WL 503756, *3 (D.N.J. 2012) (citing *Empire Healthchoice*, 547 U.S. at 701).

Here, federal criminal laws are incorporated into the local CICO statute such that federal laws could be used routinely as predicate offenses in alleging violations of the local law. This does not create a substantial federal-law issue. *See Horowitz*, 116 F.Supp.2d at 556 ("That New

---

[15] During oral argument, Defendants argued that the issue is disputed because they intend to argue that they were not involved in wire and mail fraud. The issue, however, is whether there is a disputed *interpretation* of the federal statutes. Here, there is none.

Jersey borrowed a federal definition for an element of this state law cause of action cannot operate to confer jurisdiction upon the federal court.").[16] As other courts have found, a "plaintiff's mere inclusion of federal criminal laws as predicate acts in their state-created RICO claims does not raise substantial questions of federal law." *Fairfax*, 2007 WL 1456204, at *3-4 (citing *Biovail Corp. v. S.A.C. Capital Mgmt.*, (06-1625) (D.N.J.)); *see also New Jersey Reg'l Council of Carpenters v. D.R. Horton, Inc.*, 2011 WL 4499276, *10 (D.N.J. 2011) (citing *Horowitz*, 116 F.Supp.2d at 556) ("[A] federal court does not have jurisdiction over state RICO claims simply because they are based on predicate acts that include violations of federal law.").

Third, even if the predicate federal claims were substantial and disputed, the Court's exercise of jurisdiction over the embedded federal-law issue must not disturb the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. In both *Biovail* and *Horowitz*, the district court rejected the argument that predicate federal offenses in state-law claims give rise to federal jurisdiction because "this would have the effect of vesting state legislatures with the power to 'confer federal question jurisdiction upon a

---

[16] The Virgin Islands Criminally Influenced and Corrupt Organizations Act defines "criminal activity" as:

> engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in the crimes, offenses, violations or the prohibited conduct as variously described in the laws governing this jurisdiction *including any Federal criminal law, the violation of which is a felony* and, in addition, those crimes, offenses, violations or prohibited conduct as found in the Virgin Islands Code as follows . . . [enumeration of 38 local-law offenses].

14 V.I.C. § 604(e) (emphasis added). In the Complaint, Plaintiffs identify the alleged "criminal activity" in this case to include "mail fraud, wire fraud, and, in addition, those crimes, offenses, violations or prohibited conduct as found in the Virgin Islands Code which in this case includes but is not limited to obtaining money by false pretenses, and criminal conspiracy." Compl. at ¶ 139.

19

federal court' [which is] simply an 'untenable position.'" *Fairfax*, 2007 WL 1456204, at *3 (internal quotations omitted). The Court considers that interpreting "arising under" jurisdiction to include a local CICO claim with predicate federal felonies could "markedly increase the volume of such cases in federal courts" and would do so without discernible "congressional intent to open the federal courts to the mass of [such] state actions." *Sullivan*, 602 F.Supp.2d at 537.[17] Because *Grable* instructed that lower courts consider the "potentially enormous shift of traditionally state cases into federal courts," (*Grable*, 545 U.S. at 319), the Court finds, for this additional reason, that federal jurisdiction over the CICO claim because of the predicate federal offenses is not appropriate.

Because the federal-law issues embedded in the Count VII CICO claim are not disputed or substantial, and federal jurisdiction over the federal issues would disrupt the "congressionally approved balance of federal and state judicial responsibilities," federal jurisdiction is not properly exercised over Count VII. *See id.* at 314.

### D.  Count IV: Breach of the Implied Covenant of Good Faith and Fair Dealing

In their Supplemental Brief in Opposition to Remand, Defendants argue that "[e]ach and every [one] of Plaintiffs' claims is predicated on the assertion that suspension/revocation of Dr. Gardiner's medical privileges was wrongful without affording him a *prior* hearing." Defs.' Supp. Br. at 2.[18] While Count I explicitly references the "due process clause of the fourteenth

---

[17] During oral argument, Defendants stated that, under their argument, federal jurisdiction would be exercised over every local CICO claim that alleged a federal predicate felony giving rise to a federal-law issue that is "substantial" and "disputed." If, as Defendants argue, Count VII meets the test, the acceptance of Defendants' argument would undoubtedly disturb the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

[18] Defendants argue that "each and every [one] of Plaintiff's claims" is based on a claim of insufficient pre-termination process, which in the Virgin Islands can only be governed by the

amendment,"[19] Defendants argue that Count IV is also grounded in federal law because of Plaintiffs' claim that Dr. Gardiner was denied "due process" under the Hospital's bylaws. This argument is without merit.

Count IV provides:

Count IV
(Breach of Implied Covenant of Good Faith and Fair Dealing)
. . .

122. Dr. Gardiner was entitled to a fair proceeding and due process under the Hospital's bylaws, which constituted a contract between Dr. Gardiner and the Hospital.

123. This covenant was breached when the Defendants conspired amongst themselves and others yet unknown to Plaintiffs to deny Dr. Gardiner due process so as to facilitate their achievement of an expanded monopoly on St. Croix's medical services.

The essence of Defendants' argument is that, because Plaintiffs allege a violation of the implied covenant of good faith and fair dealing rather than alleging a breach of the express provisions of the hospital's bylaws, resolution of this claim must turn on a construction of the due process clause of the Fourteenth Amendment of the United States Constitution.

Defendants ask the Court to read a constitutional issue into a state-law claim that is based solely on state-law elements and which makes no reference whatsoever to federal law. In so doing, Defendants not only invite the Court to adopt their view of the merits of Plaintiffs' Count IV cause of action, (*see* note 8), but, they ask the Court to go even further and conclude from this

---

Fourteenth Amendment of the United States Constitution. Defs.' Supp. Br. at 2. However, in their supplemental memorandum, Defendants apply this argument only to Counts I and IV. Accordingly, it remains unclear upon what grounds Defendants are claiming that Plaintiffs' other claims—defamation, CICO, tortious interference, local antitrust and unfair competition—are based upon the Fourteenth Amendment. Thus, there is no basis for concluding that this unsupported proposition merits the exercise of federal jurisdiction by this Court.

[19] The Court has already determined that Count I does not create federal jurisdiction. *See* Section II(B).

alleged failure on the merits that the cause of action is instead based upon a constitutional claim that is found nowhere in the Count. Defendants' assertion that Plaintiffs have not "plead as fact that Defendants breached any express provision of the bylaws" does not *sub silentio* create a constitutional issue that gives rise to federal jurisdiction under §1331. *See Caterpillar,* 482 U.S. at 399 ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law.") (emphasis in original). Defendants have cited no authority for such a far-reaching proposition, which, if adopted, would serve to convert virtually any implied contract claim into a federal constitutional action.[20] The Court, therefore, finds no basis for concluding that Count IV confers federal jurisdiction.

### III.   CONCLUSION

Defendants have failed to carry their burden of establishing that this Court has subject-matter jurisdiction. Accordingly, this matter will be remanded to the Superior Court of the Virgin Islands. An appropriate Order accompanies this Opinion.


Date: March 30, 2012                              _____/s/_____
                                                 WILMA A. LEWIS
                                                 District Judge

---

[20] Even if the Court were to accept Defendants' implausible proposition and find a constitutional issue embedded in Count IV, federal jurisdiction would fail under *Grable*, not only because a silent constitutional claim is neither substantial nor disputed, but also because interpreting the Fourteenth Amendment to apply to implied state-law contract claims would disturb the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Federal jurisdiction would similarly not arise under *Christianson*, because, as explained in the context of Count I, "violations of the fourteenth amendment of the constitution" and a "breach[] [of] the implied covenant of good faith and fair dealing" are independent state and federal-law theories.